UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MI'KILA SIMMONS,

Plaintiff,

v. Case No. 8:26-cv-2054-VMC-CPT

WANG & CORTES DENTAL, P.L.,
and WILLIAM C. WANG,

Defendants.
_______________________________/

**ORDER**

This matter is before the Court on consideration of Defendants Wang & Cortes Dental, P.L., and Dr. William C. Wang's Motion to Dismiss the Complaint (Doc. # 18), filed on August 14, 2026. Plaintiff Mi'Kila Simmons responded on August 17, 2026. (Doc. # 19). The Motion is granted in part and denied in part.

## I. Background

In this action, Ms. Simmons brings claims against her former employers for violations of the Florida Civil Rights Act ("FCRA") and the Fair Labor Standards Act ("FLSA"). (Doc. # 1-1). Specifically, the complaint pleads claims for: (1) race and color discrimination in violation of the FCRA against Wang & Cortes Dental (Count I); national origin discrimination in violation of the FCRA against Wang & Cortes

Dental (Count II); retaliation in violation of the FCRA against Wang & Cortes Dental (Count III); hostile work environment in violation of the FCRA against Wang & Cortes Dental (Count IV); an FLSA claim against Wang & Cortes Dental (Count V); and an FLSA claim against Dr. Wang (Count VI). (Id.).

The allegations of the complaint follow in brief. Ms. Simmons, an African American woman, worked as an orthodontic assistant at Wang & Cortes Dental beginning in October 2024. (Id. at 3). She was the only Black employee at the office. (Id. at 7). Ms. Simmons alleges that she was treated less favorably than white employees in the office, including dental assistant Vanessa and orthodontic assistant Maddison. (Id. at 4-6). For example, Ms. Simmons' work jacket had holes under both arms and she never received a computer login, but Vanessa and Maddison were given logins and better jackets. (Id.). Defendants also were more forgiving of their attendance issues. (Id.).

Another white employee, the office manager Shannon, "made repeated inappropriate remarks in [Ms. Simmons'] presence, such as 'I listen to rap,' 'I'm from the hood,' and 'I can get crazy/ghetto.'" (Id. at 7). According to the complaint, these "remarks appeared to rely on racial

stereotypes and were not made around non-Black employees." (Id.).

Defendants also "selectively enforc[ed] the phone policy" with white employees being "only verbally reminded" to put away their phones but with Ms. Simmons being "targeted" instead of "warned." (Id. at 6). After learning that Defendants were planning to terminate her, Ms. Simmons alleges she used her phone at work more but "only during downtime" and for the purpose of "contact[ing] the EEOC and attorneys." (Id.). When an orthodontist with Defendants told Ms. Simmons that her phone use was stressful, Ms. Simmons "specifically asked whether this concern applied to all staff members, including management, who also used their phones during work hours, or if it was directed only at [her]." (Id. at 6-7).

In May 2025, Defendants terminated Ms. Simmons "due to a violation of company handbook protocol," and the handbook had been edited "just one week prior to her termination." (Id. at 7-8). She alleges that this was a pretext for discrimination and that "at all relevant times [she] did perform her job at satisfactory or above-satisfactory levels." (Id. at 8).

Now, Defendants move to dismiss the complaint for failure to state a claim. (Doc. # 18). Ms. Simmons has responded (Doc. # 19), and the Motion is ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents

central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004), abrogated on other grounds by Twombly, 550 U.S. 544.

## III. Analysis

### A. Race and Color Discrimination

The FCRA, like Title VII, "provides that it is unlawful for an employer to discriminate against an employee because of the employee's race" or color. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245–46 (11th Cir. 2015) (citations omitted); Harper v. Blockbuster Ent. Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII."). "To state a race-discrimination claim under [the FCRA], a complaint need only 'provide enough factual matter (taken as true) to suggest intentional race discrimination.'" Surtain, 789 F.3d at 1246 (citation omitted). "The complaint 'need not allege facts sufficient to make out a classic McDonnell Douglas prima facie case.'" Id. (citation omitted).

Here, the complaint provides enough factual allegations that, taken as true, suggest intentional race and color

discrimination in violation of the FCRA. Ms. Simmons was the only Black employee. (Doc. # 1-1 at 7). Two white employees, Maddison and Vanessa, were allegedly treated better by Defendants, including receiving resources that were denied to Ms. Simmons and being shown greater leniency. (Id. at 4-6). The officer manager, Shannon, also made racially stereotyped remarks within Ms. Simmons' hearing. (Id. at 7). Defendants allegedly enforced their phone policy more harshly against Ms. Simmons than other employees. (Id. at 6). Finally, Ms. Simmons was fired, which is an adverse employment action. (Id. at 7-8).

The complaint is sufficient for the pleadings stage. The Motion is denied as to Count I.

**B. National Origin Discrimination**

In Count II, Ms. Simmons asserts a claim for national origin discrimination and alleges her "national origin is African American." (Doc. # 1-1 at 9-12).

Defendants argue that this claim should be dismissed because, "although [Ms. Simmons] alleges that her national origin is African American [], she does not plausibly allege that she was treated differently because of her national origin," nor does she "allege the national origin of any comparator or any comments referencing her national origin."

(Doc. # 18 at 13); see Lewis v. Mavis Tire & Auto Corp., No. 25-cv-60659, 2025 WL 1220120, at *3 (S.D. Fla. Apr. 28, 2025) (dismissing national origin discrimination claim where "Plaintiff alleges that he is an African American male but does not otherwise clarify what his national origin is," nor identified the national origin of his co-workers, nor alleged that Defendant treated him differently based on his national origin). Essentially, this national origin claim is a repackaging of Ms. Simmons' race and color discrimination claim.

Ms. Simmons "does not dispute that Count II, as currently pled, does not plausibly plead a claim distinct from Count I." (Doc. # 19 at 5). But she requests leave to amend this claim. (Id. at 6). As this is Ms. Simmons' first complaint, the Court will allow her to amend this claim. Accordingly, this claim is dismissed without prejudice.

### C. **Retaliation**

"It is an unlawful employment practice for an employer, an employment agency, a joint labor-management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under [the FCRA], or because that person has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this section." Fla. Stat. § 760.10(7).

"Under the FCRA, to make out a prima facie case of retaliation, the plaintiff must show (1) that she engaged in a statutorily protected expression, (2) that she suffered an adverse employment action, and (3) that a causal link existed between the adverse action and her protected expression." Matamoros v. Broward Sheriff's Off., 2 F.4th 1329, 1336 (11th Cir. 2021). "To establish a 'causal link' for purposes of the third element, a plaintiff need only demonstrate 'that the protected activity and the adverse action were not wholly unrelated.'" Id. (citation omitted). Although Ms. Simmons need not establish a prima facie case at the pleading stage, she must plead a plausible claim of retaliation. See Boynton v. Stone Age Korean BBQ, LLC, No. 5:23-cv-00351-HNJ, 2023 WL 12166504, at *6 (N.D. Ala. Aug. 1, 2023) ("Boynton need not prevail on an evidentiary, burden-shifting framework at this stage of the case; indeed, he need only sustain a plausible claim for relief, not even a prima facie showing.").

Defendants argue this claim should be dismissed because Ms. Simmons has not plausibly alleged that she engaged in protected activity or that a causal connection exists between

any protected activity and the adverse employment action. (Doc. # 18 at 13-19). The Court agrees.

The complaint does not plausibly allege that any statutorily protected activity occurred. Plaintiff does not allege that she made any complaints to Defendants or did anything else that could be considered opposition to discrimination. Ms. Simmons' question to one of Defendant's doctors whether Defendants took issue with all employees "us[ing] their phones during work hours, of if it was directed only at [her]" did not mention race, color, or national origin. (Doc. # 1-1 at 6-7). Thus, it was not a complaint opposing discrimination based on these protected characteristics. See Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995) ("During the hearing, Coutu made no allegation and offered no proof of race or national origin discrimination; she contended only that she worked hard and deserved a better rating than Oldland had given her. Unfair treatment, absent discrimination based on race, sex, or national origin, is *not* an unlawful employment practice under Title VII. Accordingly, Coutu's grievance against Oldland did not constitute statutorily protected activity.").

Furthermore, the complaint does not plausibly allege statutorily protected activity in the form of participation. The participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC." E.E.O.C. v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000). "[A]t a minimum, some employee must file a charge with the EEOC (or [the FCHR]) or otherwise instigate proceedings under the statute for the conduct to come under the participation clause." Carter v. Health Mgmt. Assocs., 989 So.2d 1258, 1264 (Fla. 2d DCA 2008) (quoting Total Sys. Servs., Inc., 221 F.3d at 1174 n.2). Ms. Simmons does not allege she filed a charge of discrimination before her termination; thus, she could not have been terminated for filing such charge. Ms. Simmons also alleges she used her cell phone during work hours "to contact the EEOC and attorneys." (Doc. # 1-1 at 6). But she does not allege what her phone contacts with the EEOC entailed, so the Court cannot reasonably infer that these contacts instigated an investigation.

Even if Ms. Simmons' allegations were sufficient to plead statutorily protected activity, she has not plausibly pled causation. Ms. Simmons acknowledges that the complaint did not allege that "Defendants knew the substance of [her]

phone use." (Doc. # 19 at 6). Indeed, the allegation that a doctor called Ms. Simmons' phone use "stressful" does not suggest that the doctor knew Ms. Simmons was contacting the EEOC when on the phone. (Doc. # 1-1 at 6). Thus, Ms. Simmons has not plausibly alleged causation. See Matamoros, 2 F.4th at 1337 ("[T]here is no evidence that the relevant decisionmakers knew of Matamoros's protected activity, so any adverse action taken against her couldn't have been in retaliation for it. Without some showing of awareness, the causal chain falls apart and the claim fails.").

Thus, this claim is dismissed without prejudice. Ms. Simmons may amend this claim, if she can do so consistent with Rule 11.

**D. Hostile Work Environment**

"To establish a hostile work environment claim, a plaintiff must show that: (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee — in this case, her race[, color, and national origin]; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under

either a theory of vicarious or of direct liability.” Banks v. Cypress Chase Condo. Ass’n B, Inc., 616 F. Supp. 3d 1316, 1321 (S.D. Fla. 2022) (citing Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)); Harper, 139 F.3d at 1387 (“The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII.”).

“The fourth element requires a plaintiff to prove that the work environment is both subjectively and objectively hostile.” Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240, 1249 (11th Cir. 2014). “To evaluate whether a work environment is objectively hostile, [courts] consider four factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee’s job performance.” Id. at 1250-51 (citation and internal quotation marks omitted). “‘No single factor is required’ to establish the objective component. Instead, the court is to judge the totality of the circumstances.” Nelson v. Keep Smiling Dental, P.A., No. 8:21-cv-189-VMC-JSS, 2022 WL 485244, at *7 (M.D. Fla. Feb. 17, 2022) (citations omitted).

"While [Ms. Simmons] need not establish a prima facie case at the motion to dismiss stage, enough factual matter must be alleged to plausibly support that a hostile work environment existed." Kamnerdpila v. City of St. Petersburg, No. 8:23-cv-2724-VMC-NHA, 2024 WL 3345255, at *3 (M.D. Fla. July 9, 2024).

The Court agrees with Defendants that this claim is insufficiently pled. The complaint's allegations fall short of pleading severe and pervasive harassment based on race, color, or national origin, or that the alleged harassment interfered with Ms. Simmons' work performance. The Court is mindful that the FCRA "does not regulate mere offensive utterances or general vulgarity, and it is not a 'general civility code.'" Thompson v. City of Miami Beach, 990 F. Supp. 2d 1335, 1340 (S.D. Fla. 2014) (citation omitted).

True, the office manager's statements made within Ms. Simmons' earshot that the officer manager "listen[s] to rap," is "from the hood," and "can get crazy/ghetto" were inappropriate in the workplace. (Doc. # 1-1 at 7). But these statements are not explicitly race-related. See Banks, 616 F. Supp. 3d at 1322 ("[I]t is questionable whether the use of the phrase 'you people' is enough to meaningfully link the other alleged conduct to Banks's protected status.");

Alhallaq v. Radha Soami Trading, LLC, 484 F. App'x 293, 296 (11th Cir. 2012) (dismissing hostile work environment claim based on religion in part because plaintiff had "not plausibly alleged that the harassment, namely, the remarks that she was 'dirty' and for her 'to go to Hell' and 'burn in Hell,' and the playing of Christian gospel music, was done on account of her Muslim religion"). Nor has Ms. Simmons pled that these comments were directed at her. See (Doc. # 1-1 at 7) (alleging only that office manager made inappropriate comments about herself — not about Ms. Simmons — "in [Ms. Simmons'] presence").

Additionally, these statements are not physically threatening or humiliating. Such offensive utterances, even combined with the other workplace conditions about which Ms. Simmons complains and even if made "during each of [Ms. Simmons'] workdays" (Doc. # 1-1 at 15), are not severe enough to constitute actionable harassment. See Alhallaq, 484 F. App'x at 296 (finding the complaint did not plausibly allege "the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment" where the offensive conduct, including a co-worker's "remarks that [plaintiff] was 'dirty' and for her 'to go to Hell' and 'burn in Hell,' and the playing of Christian gospel music,"

"amounted to mere offensive utterances or general vulgarity"); Thompson, 990 F. Supp. 2d at 1341 (granting motion to dismiss and noting that, while the three uses of a racial slur were "indeed offensive, neither alone nor in combination with other rude treatment at the hands of Jenkins over a two-year period do the three comments objectively state a cause of action for racial discrimination based on hostile work environment").

Ms. Simmons has also not plausibly pled that the complained-of behavior interfered with her work performance. The only allegation in the complaint on this point is conclusory: "she could not complete her duties in a timely and orderly fashion due to the abuse." (Doc. # 1-1 at 15). More than this is needed to state a plausible claim, such as a description of how her performance was impaired. See Wester v. Datex, Inc., No. 8:20-cv-1785-VMC-SPF, 2020 WL 6203530, at *2 (M.D. Fla. Oct. 22, 2020) (dismissing hostile work environment claim where plaintiff alleged "that the behavior was 'ongoing and severe and pervasive and adversely altered her job' without describing how or why her performance was impaired").

For all these reasons, this claim is dismissed. The Court, however, will permit Ms. Simmons leave to amend this claim, if she can do so consistent with Rule 11.

**E. FLSA**

In her FLSA claims, Ms. Simmons alleges that Defendants violated the FLSA both by not paying minimum wages and not paying overtime wages. (Doc. # 1-1 at 16-19). Defendants seek to dismiss these claims both as to the minimum wage and overtime theories. (Doc. # 18 at 25).

Ms. Simmons concedes "that her rate of pay, $23.00 per hour, undermines any claim premised solely on unpaid minimum wages, since that rate substantially exceeds the federal minimum wage." (Doc. # 19 at 8-9). She does not oppose dismissal of the minimum wage aspect of the FLSA claim. (Id. at 9). Thus, the FLSA claims are dismissed as to the minimum wage theory.

That leaves the overtime aspect of the claims. "If an employee has worked overtime without pay, he may bring a private FLSA action for damages." Bailey v. TitleMax of Georgia, Inc., 776 F.3d 797, 801 (11th Cir. 2015) (citing 29 U.S.C. § 216(b)). "An unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work." Id.

Ms. Simmons has sufficiently pled an overtime claim. While her complaint is barebones, it does allege that Ms. Simmons worked more than 40 hours per week but was not paid time and one half for the overtime hours. See (Doc. # 1-1 at 17-18) ("Plaintiff performed services and worked in excess of the maximum hours provided by the FLSA but no provision was made by the Defendant to properly pay at the rate of time and one half for all hours worked in excess of forty hours (40) per workweek as provided in the FLSA."). Ms. Simmons also alleges that Defendants "willfully and intentionally refused to properly pay [her] overtime wages as required by the law of the United States . . . since the commencement of [her] employment." (Id. at 19).

This is sufficient for the pleading stage. See Rodriguez v. City Buffet Mongolian Barbeque, Inc., No. 8:18-cv-2745-TPB-CPT, 2020 WL 2476043, at *4 (M.D. Fla. Apr. 22, 2020) ("In short, an FLSA overtime plaintiff must plead sufficient facts, plausible on their face, to demonstrate that he worked more than forty hours in at least one workweek, and that the defendant failed to pay the requisite premium for those overtime hours. Rodriguez satisfies these pleading requirements. In particular, he alleges that he worked in excess of forty hours a week during his tenure at City Buffet

and that the Defendants failed to compensate him at the time-and-a-half rate." (citations omitted)), report and recommendation adopted, No. 8:18-cv-2745-TPB-CPT, 2020 WL 2473452 (M.D. Fla. May 13, 2020); Mankin v. Hair Therapy for Women, LLC, No. 8:15-cv-2071-VMC-JSS, 2015 WL 5953239, at *2 (M.D. Fla. Oct. 13, 2015) ("The instant Complaint alleges that Mankin was an employee of a covered enterprise, which for the past 3 years failed to keep accurate time records and pay employees, including Mankin, for hours worked over 40 hours in a workweek. Such allegations are sufficient under this Circuit's precedent." (citation omitted)).

Thus, the Court dismisses the FLSA claims only as to the minimum wage theory.

Finally, because some claims survive and leave to amend has been granted for the others, Defendants are not entitled to fees and costs. (Doc. # 18 at 26).

Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendants Wang & Cortes Dental, P.L., and William C. Wang's Motion to Dismiss the Complaint (Doc. # 18) is **GRANTED** in part and **DENIED** in part as set forth herein.

(2) If Plaintiff wishes to amend, she must file her amended complaint within 14 days of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 26th day of August, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE